842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Louis Preston TOWNSEND, Plaintiff-Appellant,
v.
FEDERAL AVIATION ADMINISTRATION, et al. Defendants-Appellees.
 No. 87-3205.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1988.
 
 Before BOYCE F. MARTIN, Jr., RALPH B. GUY, Jr., and BOGGS, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, Townsend, appeals from the grant of summary judgment to defendant in this Title VII, 42 U.S.C. Sec. 2000e, employment discrimination action.[1] Townsend is a long-time, black employee of the Federal Aviation Administration (FAA) who claims racial discrimination in connection with a promotion he applied for but did not receive.
 
 
 2
 The district court concluded that there were no genuine issues as to any material facts and that the defendant was entitled to judgment as a matter of law.[2] Upon a full review of the record, we agree and affirm.
 
 I.
 
 3
 Townsend, along with several other FAA employees, bid on an open position for a GS-13 Supervisory Electronics Technician. If a number of persons apply for a merit selection position, a rating panel is appointed which has the responsibility of narrowing the field to two to seven "best qualified" candidates. Here the panel narrowed the field to five, one of whom was Townsend. The narrowed-down list was then sent to the selecting official, who in this case was Ronald E. Ide, an Area Manager at Detroit Metropolitan Airport. It is undisputed that the selecting official may choose the person he deems best qualified from the rating panel list. Of the five names on the list, Ide knew all of the applicants personally except Townsend. The rating panels make no racial identification of applicants and at the time Ide received the list he did not know Townsend was black. In late 1983, Ide ultimately selected Francis J. Zawacki, a white man.
 
 
 4
 On January 6, 1984, Townsend filed with the FAA a formal complaint of discrimination alleging that he was not given fair consideration for the open position due to his race. Townsend's complaint was investigated and on April 12, 1984, the report of the investigator was filed. Thereafter, the Civil Rights Division of the FAA attempted to resolve the matter informally and when these efforts failed, the case was set before a Hearing Examiner. On October 15, 1985, the Hearing Examiner submitted his recommendations to the agency denying Townsend's complaint. On December 18, 1985, the Department of Transportation adopted the Hearing Examiner's findings and they advised Townsend of his right to appeal. Townsend availed himself of this right and on January 16, 1985, started this action in the district court.
 
 
 5
 This incident was not the first clash between Townsend and the FAA over alleged racial discrimination. In 1980, Townsend filed a charge of discrimination after he had been removed from a supervisory position. This charge was resolved when the FAA and Townsend entered into a "Resolution Agreement" (agreement). The agreement did not restore Townsend to his former job, but it did provide in pertinent part:
 
 
 6
 The Federal Aviation Administration, Great Lakes Region, has offered, and I have accepted, the following resolution to my complaint:
 
 
 7
 1. The disposal, after a two-year period, of all documents and entries relating to the facts and circumstances which lead to the filing of my complaint of discrimination on February 15, to include all letters of records, letters of warning, and any reference to any records pertaining to the request for a fitness-for-duty evaluation or determination.
 
 
 8
 2. I shall not be penalized in any future considerations for wage increases, promotions, transfers, assignments, or other employment-rated matters because of my having filed a complaint of discrimination against the FAA.
 
 II.
 
 9
 On appeal, Townsend essentially makes three arguments:[3] (1) that he was more qualified than Zawacki; (2) that he was not promoted because he was being retaliated against for his earlier civil rights complaint; and (3) that the failure to promote him is in violation of the resolution agreement.[4] We discuss these arguments seriatim.
 
 A. The Claim of Superior Qualifications
 
 10
 A major portion of Townsend's argument on this issue is predicated upon the fact that the rating panel rated him, as well as another black applicant, ahead of Zawacki. There are several problems with this argument. To begin with, it is the function of the rating panel to present a pool of qualified applicants. Although in going through the rating process the applicants are assigned numerical scores, the selecting officer is not privy to these scores nor are the applicants ranked when the list is given to the selecting officer. Also, the difference between the scores of Townsend and Zawacki on a hundred scale was .09 so that even if Ide had the scores, one applicant was not clearly superior to the other. Furthermore, the rating panel score is a composite based on general overall qualifications and background. The selecting officer, however, has his own priorities as to specific areas of expertise called for by the job.
 
 
 11
 Notwithstanding the fact that the selecting officer was free to choose any one from the pool,[5] Ide made a strong case for his decision to choose Zawacki over Townsend. Townsend was the only applicant not known by Ide. Although one can argue that that creates an unfair situation for Townsend,[6] in and of itself, it does not constitute evidence of discrimination. Ide had legitimate reasons for wanting to deal with a known quantity. In Ide's own words he approached this selection as follows:
 
 
 12
 I needed an individual capable of handling labor situations and personnel problems, and I wanted someone who would be a self starter. I already had three weak supervisors, and felt that I had to have a very strong person in the position, especially with the increase in my position responsibilities. In July 1983, I assumed responsibility for seven major locations, as opposed to Detroit alone. I could no longer directly oversee the work of my Operations Officers personally, as I had in the past. This was a real consideration in the person selected.
 
 
 13
 Townsend, not being a known quantity, further contributed to his own downfall by submitting an incomplete and poorly presented bid package. For example, it did not even list his present position, it was submitted, in part, on the wrong form, it did not contain a current performance evaluation and it did not contain a performance evaluation from his current supervisor. When Ide finally found out who was Townsend's supervisor and contacted him, the supervisor did not even know Townsend was bidding on the job.
 
 
 14
 Ide also indicated that it was the positive attributes of Zawacki that made him the first choice.
 
 
 15
 Q. (By Mr. Niermann) Of the people that you looked at in deciding who to select, who was stronger technically than Mr. Townsend?
 
 
 16
 A. Frank Zawacki.
 
 
 17
 Q. Only Mr. Zawacki?
 
 
 18
 A. Yes, because on the bid we specified the areas of certification that were important called level A and level B certification. Frank had the greater number of those. He had four out of the six. He also in the position of the OPS officers, you're overseeing five equipment specialists. That's the NAV, the COM, the radar and the data and environmental. Frank had four out of the five.
 
 
 19
 Q. Four of the six I thought.
 
 
 20
 A. Four out of the six certifications. Four out of the five equipment specialties. They're two different things here. I realize that's our terminology.
 
 
 21
 Q. How many did Mr. Townsend have?
 
 
 22
 A. Mr. Townsend had three out of the five. In the certification area he had two out of the six.
 
 
 23
 Q. He had two of the six?
 
 
 24
 A. Yes.
 
 
 25
 Q. And three out of the five equipment specialties.?
 
 
 26
 A. Right.
 
 
 27
 Q. I don't know if you can do this in a nutshell, but can you tell me which certifications and equipment specialties that Mr. Zawacki had that Mr. Townsend didn't have that made him more desirable?
 
 
 28
 A. It wasn't that he had certain ones. He had more of what we needed for the job. He was the stronger candidate.
 
 
 29
 (App. 179-81).
 
 
 30
 Although Townsend's own evaluation of the relative strengths and weaknesses of him and Zawacki might differ--that is not the issue. Beyond peradventure the record before the district court demonstrated a clear and specific articulation by the defendant of a legitimate non-discriminatory reason for its actions. Thus, plaintiff would have to demonstrate that he could prove pretext to thwart the summary judgment motion. Nothing in the record suggested any discriminatory past actions or racial animus on the part of Ide. In fact, Richard Belue, a black operations officer who worked for Ide at one time, stated that Ide was as fair as could be on selections and in his opinion, race was not a consideration on Ide's selections or decisions. (App. 274). Ide was generally highly regarded by those who worked for him and with him.
 
 
 31
 The only contentions in the record that really are offered as support for pretext involve plaintiff's claims as they relate to the resolution argument and the alleged retaliation.
 
 B. The Resolution Agreement
 
 32
 Plaintiff's claim that the defendant breached the resolution agreement is tenuous at best. Even if the resolution agreement was breached, it does not necessarily follow that the breach is evidence of pretext. The resolution agreement comes close to being a meaningless document. Except for directing that certain unspecified documents be purged from plaintiff's file, it promised nothing to which plaintiff was not already entitled. Although it stated that plaintiff would not be penalized in consideration for future promotions or assignments--there is no evidence that he was. Actually this is purely a boot-strapping argument by plaintiff since the only evidence he offers of breach is the failure to get the job at issue in this litigation. It must be remembered that the predicate for the resolution agreement was Mr. Townsend being removed from a supervisory position. The discrimination charge that followed was resolved by the agreement which can only be realistically viewed as a device used by the conciliator to allow Townsend to save face while denying him any real substantive relief.
 
 
 33
 Relative to the resolution agreement, plaintiff also argues that Ide should not have been told by Townsend's former supervisor about the prior removal from a supervisory position. The simple answer to this argument is that the agreement does not so provide. Townsend thought management was trying to build a case against him by documenting certain alleged infractions or performance lapses. These are the documents that management agreed to remove from his file. There was never a promise that his actual job history would remain a secret.
 
 C. Retaliation
 
 34
 Although Townsend does allude to retaliation in his pleadings, the reference is very general and specifies only the failure to promote that is involved herein.[7] An additional problem with this allegation is that it allegedly stems from an incident that appellant complained about but was afforded no relief, i.e., the 1979 removal from a supervisory position.
 
 
 35
 The district court also had before it a letter written by Townsend to Alvin Ray, the Chief of the Civil Rights Staff of the Great Lakes Region of the FAA. (App. 26-27). This letter also suffers from being so general that it supplies no indication of how Townsend was affected by what occurred. For example, the letter states: "November 14, 1980: Use of non-selection procedures to fill Operations Officer position, bid number AGL-80-178, GS-856-13, Cleveland, Ohio AFS (promotion)." This statement, which is typical, reveals nothing of the circumstances which would indicate how or why retaliation against Townsend was implicated. Townsend has the burden of proof on the issue of retaliation or retaliation as a part of pretext. The Supreme Court recently stated in Celotex Corp. v. Catrett, 477 U.S. 317 (1986):
 
 
 36
 [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 37
 106 S.Ct. 2548, 2552-53.
 
 
 38
 What Townsend has done is to recite certain occurrences but has failed to show that they were motivated by a discriminatory animus or were pretextual in nature.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 Although multiple defendants are listed in the pleadings, the correct defendant was Elizabeth Dole, Secretary, United States Department of Transportation. Several of the improperly named defendants were dismissed out of this action
 
 
 [2]
 The district court issued only an order and no opinion; however, it is clear from the record that plaintiff was able to make out a prima facie case and that the defendant had articulated a legitimate non-discriminatory reason for the discharge. It was plaintiff's failure to demonstrate that he could prove pretext that resulted in this judgment adverse to him
 Although Fed.R.Civ.P. 56 does not require a district judge to set forth findings of fact and conclusions of law, where the party moving for summary judgment advances several reasons for summary judgment, some of which are procedural, as was the case here, the reviewing court is left with a very difficult task on appeal if the reasons for the trial court's decision are not made known. This is particularly true in an employment discrimination case when there are different points (e.g., failure to make a prima facie case or failure to show pretext) where a party might fail. In order to avoid a remand, it is the better practice to at least set forth the general parameters of the basis for the decision.
 
 
 [3]
 Although in his brief plaintiff argues at various points that summary judgment was improper due to there being disputed facts, he did not specifically make that contention one of his appeal issues. Rather, in framing his issues, he stated that "there were uncontroverted facts in support of appellant's allegations...." It thus appears clear that plaintiff is challenging the court's ultimate conclusion and not raising factual issues
 
 
 [4]
 The FAA argues that the retaliation and resolution issues were not properly before the district court because they were not part of the administrative charge filed by plaintiff. The district court did not specifically address this issue and we find it unnecessary to resolve this issue in reaching our decision
 
 
 [5]
 No attack is made by plaintiff on the system used to fill these vacancies. As long as a selecting officer can pick and choose from a list of as many as seven qualified applicants, a disappointed applicant has an uphill struggle in making a discrimination claim stick unless he has evidence external to the selection process itself to support a claim
 
 
 [6]
 The selecting officer was not required to conduct interviews as part of the selection process and did not interview Townsend
 
 
 [7]
 Paragraph V of plaintiff's amended complaint contains the only reference to retaliation. It reads in relevant part:
 Plaintiff has been discriminated against, due to his race, in job promotion, transfer and selection procedures, when on January 6, 1984, he was not promoted to the position of Supervisory Electronics Technician at Detroit Metro Airport. These actions and inactions were also perpetrated on plaintiff in retaliation for his having filed earlier charges of discrimination beginning in May of 1979, when he was removed from a supervisory position at the Cuyahoga County Sector Field Office, Cleveland Airway Facilities Sector.